**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

XENE INNOVATIONS, LLC,

     *Plaintiff*,

v.

THE BOEING COMPANY,

     *Defendant.*

Civil Action No.: 2:25-cv-00753 (EWH-RJK)

Jury Trial Demanded

## **BOEING'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS XENE'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    **Introduction**................................................................................................... 1

II.   **Legal Standards** ........................................................................................... 3

III.  **Background Facts** ........................................................................................ 6

    A.    Xene ......................................................................................................... 6

    B.    Boeing....................................................................................................... 6

    C.    The Asserted '584 Patent......................................................................... 7

    D.    Xene's Infringement Accusations............................................................ 8

    E.    Complexity of Boeing's Accused 787 and 777X Airplanes................... 10

IV.   **Argument**....................................................................................................... 11

    A.    Xene's Section 271(a) Claim for Direct Infringement Should Be Dismissed............................................................................................... 12

    B.    Xene's Section 271(b) Claim Should Be Dismissed ............................. 27

    C.    Xene's Section 271(g) Claim Should Be Dismissed ............................. 27

    D.    Xene's Willful Infringement Claim Should Be Dismissed.................... 28

V.    **Conclusion** ................................................................................................... **28**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anza Tech., Inc. v. D-Link Sys., Inc.*,
No. 316-CV-01263-BEN-AGS, 2016 WL 8732647 (S.D. Cal. Nov. 4, 2016) ...............27, 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... *passim*

*Auth Token LLC v. City Nat'l Bank*,
817 F. Supp. 3d 211 (S.D.N.Y. 2026) ...................................................3, 13, 21, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................... *passim*

*BlackBerry Ltd. v. Nokia Corp.*,
No. 17-CV-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018) .......................28

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ....................................................................... *passim*

*Bowman v. Select Portfolio Servicing, Inc.*,
704 F. Supp. 3d 633 (D. Md. 2023)..........................................................................5

*Cohen v. Cap. One Funding, LLC*,
489 F. Supp. 3d 33 (E.D.N.Y. 2020) ..................................................................1, 4, 5

*CTD Networks, LLC v. Google, LLC*,
688 F. Supp. 3d 490 (W.D. Tex. 2023) ..........................................................13, 28

*CTD Networks, LLC v. Google, LLC*,
No. 2023-2428, 2024 WL 2587917 (Fed. Cir. May 24, 2024)...............................13

*Delphix Corp. v. Actifo, Inc.*,
No. C 13-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014).........3, 5, 20, 21

*DigitalDoors, Inc. v. EagleBank*,
No. 24-CV-03792-LKG, 2026 WL 554533 (D. Md. Feb. 27, 2026) ....................21

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
312 F. Supp. 3d 830 (C.D. Cal. 2018) ..................................................................20

*Epcon Homestead, LLC v. Town of Chapel Hill*,
62 F.4th 882 (4th Cir. 2023) .........................................................................2, 4, 5

*E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*,
213 F.3d 175 (4th Cir. 2000) ...............................................................................4

*Forest Lab'ys, Inc. v. Abbott Lab'ys*,
239 F.3d 1305 (Fed. Cir. 2001)...........................................................2, 20, 21, 22

*Golden v. Google LLC*,
2025 WL 1752485 (Fed. Cir. June 25, 2025) .....................................................28

*Golden v. Qualcomm Inc.*,
No. 2023-1818, 2023 WL 6561044 (Fed. Cir. 2023) .......................................4, 13

*Heidary v. Amazon.com, Inc.*,
706 F. Supp. 3d 525 (D. Md. 2023) ...................................................................12

*Heidary v. Amazon.com, Inc.*,
No. 2024-1580, 2024 WL 4489918 (Fed. Cir. Oct. 15, 2024)........................13, 27

*Jenkins v. LogicMark, LLC*,
No. 3:16-CV-751-HEH, 2017 WL 376154 (E.D. Va. Jan. 25, 2017).....................13

*Katti v. Arden*,
161 F.4th 217 (4th Cir. 2025)............................................................................3, 4

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,
677 F. Supp. 3d 1079 (N.D. Cal. 2023) .............................................................18

*Lab'y Corp. of Am. Holdings v. Qiagen Scis., LLC*,
148 F.4th 1350 (Fed. Cir. 2025) ........................................................................22

*Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*,
No. 3:18-CV-01074-K, 2018 WL 10425908 (N.D. Tex. Oct. 9, 2018) ...........12, 25

*Limelight Networks, Inc. v. Akamai Techs., Inc.*
572 U.S. 915 (2014) ..........................................................................................28

*Loyal-T Sys. LLC v. Am. Express Co.*,
800 F. Supp. 3d 580 (S.D.N.Y. 2025)...................................................13, 20, 21

*Minn. Min. & Mfg. Co. v. Chemque, Inc.*,
202 F.3d 1294 (Fed. Cir. 2002) .........................................................................10

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006).........................................................................12

*Parking World Wide, LLC v. City of St. Louis*,
724 F. Supp. 3d 840 (E.D. Mo. 2024).................................................................5

*Phillips v. Pitt Cnty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) .......................................................................................5

*Progenics Pharms., Inc. v. MIM Software Inc.*,
  762 F. Supp. 3d. 100 (D. Mass. 2025) .......................................................................17

*Progme Corp. v. Twenty-First Century Fox*,
  No. 18-11057, 2023 WL 3608787 (E.D. Mich. May 23, 2023) ..................................4

*Robern, Inc. v. Glasscrafters, Inc.*,
  206 F. Supp. 3d 1005 (D.N.J. 2016) ...........................................................................3

*Rowe v. Bank of Am., N.A.*,
  No. 4:10CV92, 2011 WL 8318390 (E.D. Va. Apr. 12, 2011) .....................................4

*Rowe v. Bank of Am., NA*,
  465 F. App'x 229 (4th Cir. 2012) ................................................................................4

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
  No. 5:19-CV-243-H, 2021 WL 3030066 (N.D. Tex. July 2, 2021)............................. *passim*

*Special Equip. Co. v. Coe*,
  324 U.S. 370 (1945) ....................................................................................................2

*TexasLDPC Inc. v. Broadcom Inc.*,
  No. 1:18-CV-1966-SB, 2021 WL 1092578 (D. Del. Mar. 22, 2021)........................24

*U.S. v. Garcia*,
  855 F.3d 615 (4th Cir. 2017) ......................................................................................6

*VTT Tech. Rsch. Ctr. of Finland Ltd. v. Teledyne Flir, LLC*,
  No. CV 25-348, 2025 WL 2576383 (D. Del. Sept. 5, 2025) .....................................24

*Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*,
  No. CV 20-333-GBW-CJB, 2023 WL 7125196 (D. Del. Oct. 30, 2023)...................22

*Wolf Run Hollow, LLC v. State Farm Bank, F.S.B.*,
  No. 1:12-C-9449, 2013 WL 6182941 (N.D. Ill. Nov. 26, 2013) ..............................13

**Statutes**

35 U.S.C. § 271(a) ...........................................................................................12, 20, 22, 27

35 U.S.C. § 287(a) .......................................................................................................20, 24

**Rules**

Rule 12(b)(6)...................................................................................................................3, 4

## I.   INTRODUCTION

Plaintiff Xene Innovations, LLC, a shell company organized shortly before the Initial Complaint was filed for the purpose of asserting patents, asserts that two of the world's most advanced airplanes—Boeing's 787 and its forthcoming 777X—are manufactured using a patented process for shaping tennis racquets and solving tennis elbow.  Putting aside the fact that airplanes are not tennis racquets, Xene's First Amended Complaint ("FAC") has a fatal flaw.  Xene's asserted patent claim requires (among other things) the use of so-called "foamable microcapsules" inside a sealed mold to generate internal pressure on and shape carbon composite material.  FAC Ex. A (the "'584 Patent") at 30:16–21, 30:24–30.  Yet the FAC contains no facts plausibly showing that foamable microcapsules are used at all to make any 787 or 777X parts.  To the contrary, the FAC relies on exhibits showing that Boeing *does not* use foamable microcapsules to make 787 or 777X parts.  These cited materials instead plainly show that Boeing makes composite parts by wrapping composite material around the *outside* of molds *without the use of foamable microcapsules*.  So no foamable microcapsules could be used *inside* the mold to pressurize or shape the material as the patent requires.  And the FAC's exhibits also show that Boeing uses hollow, open-ended molds, not the "closed" molds turned into "sealed pressure vessels" required by Xene's patent claims.

This fails to satisfy Rule 12(b)(6)'s requirement that a plaintiff allege "enough facts" to make its claim for relief "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Xene's own allegations make infringement ***im***plausible and contradict its conclusory assertion of infringement.  *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021); *Cohen v. Cap. One Funding, LLC*, 489 F. Supp. 3d 33, 44 (E.D.N.Y. 2020).  That Xene failed to add any facts to its FAC showing any foamable microcapsules were ever used to make

1

any 787 or 777X part, even after Boeing moved to dismiss the Initial Complaint on this basis, tells the Court that Xene has no factual basis to provide. Xene's FAC should be dismissed with prejudice.

Perhaps recognizing these shortcomings, Xene cites three Boeing patents, which allegedly have "similarities" to or "closely track" Xene's patent, and asserts "on information and belief," without any further factual support, that Boeing uses those patents to manufacture many 787 and 777X airplane parts. *See*, *e.g.*, FAC ¶¶ 93, 97, 100, 105, 189. Xene seems to believe that *if* Boeing uses its three allegedly "similar" patents, Boeing must necessarily infringe *Xene's* patent. Not so. Patent infringement requires that the defendant practice *every step* of the asserted patent claim or its equivalent, not merely that a defendant uses something "similar" or "close." *See Forest Lab'ys, Inc. v. Abbott Lab'ys*, 239 F.3d 1305, 1313 (Fed. Cir. 2001). The Court may take judicial notice of the material differences between the cited Boeing patents and Xene's asserted patent, which are facially apparent here. *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023).

And Xene's allegation, "on information and belief," that Boeing's 787 and 777X use the allegedly similar processes in the Boeing patents is an enormous and unsupported assumption that is contradicted by the facts alleged elsewhere in the FAC, including in the exhibits that Xene has incorporated. Companies are not required to use their own patents, much less (as Xene assumes) use them to make their commercial products. *See* 35 U.S.C. § 154 (patent is purely an exclusionary right with no requirement for patentee use); *Special Equip. Co. v. Coe*, 324 U.S. 370, 378 (1945) (same). "Where, as here, some of the allegations are qualified with the phrase ['on information and belief'] and others are not, . . . [it] creates a[n] inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue

2

degree." *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014). It certainly does not change Xene's failure to allege facts showing Boeing's 787 and 777X use those allegedly similar processes. *Auth Token LLC v. City Nat'l Bank*, 817 F. Supp. 3d 211, 221 (S.D.N.Y. 2026) (dismissing infringement claims where plaintiff pleaded on "information and belief" that defendant performed the steps in a document allegedly matching plaintiff's patent claim but failed to plead facts showing defendant was required to use the process in that document).

Ultimately, the FAC is exactly the type of vague, opportunistic pleading regarding a complex product that courts have made clear should not survive a motion to dismiss. The more complex a product is, the greater detail should be included in a complaint alleging patent infringement. *See*, *e.g.*, *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *7 (N.D. Tex. July 2, 2021). Yet, while the FAC itself makes clear that the allegedly infringing airplanes are two of the most complex machines in the world, *see*, *e.g.*, FAC ¶ 142 & Ex. Q, it fails to include anywhere near the detail required in factual pleading supporting infringement of such a complex product. The facts it does plead actually establish ***non***-infringement. The FAC should be dismissed in its entirety with prejudice.[1]

## II.    LEGAL STANDARDS

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Katti v. Arden*,

---

[1] In the infringement contentions Xene provided during discovery, Xene asserted Claims 12 and 13 of the '584 Patent as well. Those claims are not in the FAC, and such "after-the-fact disclosures cannot be used to supplement the pleadings and meet the *Iqbal/Twombly* standard." *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1011 (D.N.J. 2016). Regardless, because those claims depend on Claim 11 and contain all its limitations, their inclusion would not have prevented dismissal. Those claims should be dismissed for the same reasons set forth herein.

161 F.4th 217, 224 (4th Cir. 2025).  Although "[c]ourts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true . . . a court 'need not accept the legal conclusions drawn from the facts,' nor 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"  *Rowe v. Bank of Am., N.A.*, No. 4:10CV92, 2011 WL 8318390, at *2 (E.D. Va. Apr. 12, 2011), *aff'd sub nom. Rowe v. Bank of Am., NA*, 465 F. App'x 229 (4th Cir. 2012) (citing *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

For a patent infringement claim, the Rule 12(b)(6) pleading standard is not whether discovery *might* possibly reveal some use by the defendant of the patented method; nor is it whether the complaint recites each element of its patent claim accompanied by an unsupported allegation that the defendant meets those elements.  *Golden v. Qualcomm Inc.*, No. 2023-1818, 2023 WL 6561044, at *1 (Fed. Cir. 2023) (quoting *Bot M8*, 4 F.4th at 1352–53); *Progme Corp. v. Twenty-First Century Fox*, No. 18-11057, 2023 WL 3608787, at *5 (E.D. Mich. May 23, 2023); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (stating that law prohibits "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions").  Allowing such complaints to proceed would crowd court dockets with baseless suits and would further encourage patentholders to file burdensome and expensive patent litigation designed to extract nuisance settlements from targeted companies.

When evaluating a Rule 12(b)(6) motion to dismiss, the court may consider the complaint, the exhibits attached thereto, and any documents incorporated therein.  *Epcon Homestead*, 62 F.4th at 885.  Where a plaintiff, like Xene here, cites various exhibits, webpages, and videos, the court may and should consider those materials where they contradict the plaintiff's own allegations, and not merely the selective or out-of-context passages chosen by plaintiff.  *Cohen*, 489 F. Supp. 3d at

4

44 ("Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss"; "If 'the documents contradict the allegations of a plaintiff's complaint, the documents control and the [c]ourt need not accept as true the allegations in the complaint.'").

While the same *Twombly/Iqbal* plausibility standard applies to all civil actions, including patent-infringement cases, when the accused product or process is complex, more factual detail is naturally required to satisfy that same standard. Not because the standard is elevated, but because the more complex a product is, the greater detail should be included in a complaint alleging patent infringement. *Soar Tools*, 2021 WL 3030066, at *7. And, although "information and belief" pleading is permissible in appropriate circumstances, it does not relieve a plaintiff of its obligation to plead facts plausibly supporting its conclusory assertions. An "information and belief" allegation that is contradicted by the plaintiff's own exhibits and other factual allegations in the complaint is entitled to no deference. *See Delphix Corp.*, 2014 WL 4628490, at *1.

The Court may also "take judicial notice of matters of public record," such as patents, patent file histories, and publications of the U.S. Patent and Trademark Office, including patent databases and information on the USPTO's website. *Epcon*, 62 F.4th at 885; *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (similar); *Parking World Wide, LLC v. City of St. Louis*, 724 F. Supp. 3d 840, 843 (E.D. Mo. 2024) (considering a patent in granting a motion to dismiss patent infringement claim even though it was not attached to the complaint because the patent was "integral to the asserted claims, a matter of public record, and its authenticity [was] not in dispute."); *Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 642 (D. Md. 2023) (explaining that "court[s] may take judicial notice of publicly available information on state and

federal government websites without converting the motion to one for summary judgment") (citing *U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017)).

### III.    BACKGROUND FACTS

#### A.  Xene

Xene Innovations, LLC filed its Initial Complaint against Boeing on November 17, 2025. (Dkt. No. 1) ("Initial Complaint").  On July 1, 2026, after the Court granted Xene leave to amend (Dkt. No. 84), Xene filed its FAC. (Dkt. No. 85).  Xene's FAC identifies no business other than allegedly holding and litigating the patents it asserts.  Xene is a shell company and non-practicing entity that organized less than two months before it filed this lawsuit.[2]  It allegedly acquired the asserted '584 Patent five weeks before filing suit, FAC ¶ 76, and its principal address is marketed as a "virtual office" giving its users "a professional business image" "without . . . dedicated office space."[3]

#### B.  Boeing

Boeing is "the nation's largest exporter," "employs more than 140,000 people" and "invests in production, innovation and product development."  FAC Ex. E at 3.  "In addition to the company's operations, Boeing works with more than 12,000 businesses supporting more than one million supplier jobs across the United States, and at locations in every state.  Globally, the company has operations in more than 65 countries."  *Id.*  "As a leading global aerospace company, Boeing develops, manufactures and services commercial airplanes, defense products and space systems for customers in more than 150 countries."  *Id.*

---

[2] Ex. 1.

[3] FAC ¶ 16 ("400 S. 4th Street, 3rd Floor, Las Vegas, NV 89101"); Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6.

### C. The Asserted '584 Patent

Xene's FAC accuses Boeing of infringing U.S Patent No. 11,806,584 (the "'584 Patent," attached as Exhibit A of the FAC).  FAC ¶¶ 42, 46.  The '584 Patent describes a purported improved process for manufacturing sports racquets, such as tennis racquets.  *E.g.*, FAC ¶ 6 & '584 Patent at 1:25–30, 2:45–55.  According to the patent, prior racquets had hollow frames and open-ended handles, which increased shoulder and elbow injuries due to vibration and shock.  '584 Patent at 2:47–55.  The claimed invention "addresses these issues by providing a carbon composite frame structure of increased strength and reliability, providing the frame head and handle with an inner core of foam plastic."  *Id.* at 2:66–3:3.

The '584 Patent purports to make these foam-cored racquets by "fill[ing]" a volume "*in* an iron mold" with "microcapsule foaming plastic material" and applying heat to cause those foamable microcapsules to expand.  This "foaming … forms the foam plastic inner core of the racquet" and causes the "fiber layer" to "press up against the inside surface of the mold to take the shape of the mold cavity." *Id.* at 4:23-58, 12:30–33; *see id.* at *Abstract* (foamable microcapsules are put *inside* the graphite racquet component to "apply the pressure used to form the graphite composite material of which the racquet is comprised").  According to the '584 Patent, the heat and expansion "results in…enough pressure to press the layers of graphite carbon fiber against the mold walls to form the carbon fiber into the shape of the cavity of the mold," and "[a]fter cooling, the plastic material thus solidifies in the shape of the inside of the mold cavity." *Id.* at 4:59-67. The "racquet *is thus not hollow* like conventional graphite racquets." *Id.* at *Abstract*.[4]  Below are illustrations of this concept from the '584 Patent:

---

[4] All emphases have been added unless noted otherwise.



FIGURE 8

'584 Patent at Fig 8, 9 (annotations added).  Upon completion, the patented process results in "solid composite part[s]" filled with expanded foam.  *See* FAC ¶¶ 53–54.

### D.  Xene's Infringement Accusations

The '584 Patent initially described the purported invention as "particularly adapted for demanding applications such as sports racquets, including tennis racquets, badminton racquets and other sports applications," Ex. 7 at 105 ('584 *Abstract* as filed on Nov. 19, 2018)).  But in 2023, the patent applicants added presently asserted Claim 11 that, in lieu of expressly claiming sports racquets, recites something more generically referred to as a "shaped fiber composite part."  *See* '584 Patent at cl. 11; Ex. 7 at 123 (Apr. 26, 2023 Amendment adding claim 27, which ultimately issued as Asserted Claim 11).  The Asserted Claims 11 and 14 were added ***after*** Boeing introduced the groundbreaking 787 featuring a composite fuselage and wings that Xene now says infringe its patent.  '584 Patent at 1 (filed Nov. 19, 2018); *see* Section III(E), *infra.*  And they were added ***after*** the Boeing patents issued that Xene claims are similar to the '584 Patent.  Indeed, the 787 program predates the entire '584 patent family.  FAC Ex. R (first 787 fuselage barrel section built in 2004).

8

Despite that Boeing's aircraft have been in production long before the '584 Patent issued, Boeing now accuses the 787 and 777X of infringing Claims 11 and 14 of the '584 Patent.[5] Important to this motion (and the absence of sufficient factual allegations), each of these Claims sets forth a series of specified steps, each of which must be performed to infringe the Claim.

In particular, each Claim includes multiple steps requiring the use of "foamable microcapsules." They also require the "adding" of "foamable microcapsules" *within the "internal volume of said constraining mold" such that those microcapsules "expand"* to "create[] a resulting pressure inside [the] sealed pressure vessel to [the] carbon or fiberglass composite" to manufacture a shaped fiber composite part. '584 Patent at cl. 11. These and other steps requiring the use of "foamable microcapsules" are bolded and italicized in the full text of Claim 11, copied below:

> 11. A method of manufacturing a shaped fiber composite part, comprising:
> (a) supplying thermally expandable *foamable microcapsules*, said *microcapsules encapsulating a foaming agent*;
> (b) supplying an uncured carbon or fiberglass composite having a curing temperature;
> (c) supplying a rigid constraining mold;
> (d) placing said uncured carbon or fiberglass composite against a wall of said constraining mold;
> (e) *adding said foamable microcapsules to an internal volume of said constraining mold proximate to said uncured carbon or fiberglass composite*, said *foamable microcapsules* being configured to undergo volumetric expansion by foaming only when heated to a predetermined first temperature;
> (f) closing said constraining mold to create a sealed pressure vessel;
> (g) causing a plurality of said *foamable microcapsules* to expand by heating said *foamable microcapsules* to above or at the predetermined first temperature, so that

---

[5] Xene has now amended its "Accused Products" to include all the principal structural components of the 787 and 777X, *and* "any other aircraft, variant, or component containing carbon-fiber composite parts manufactured using the patented process." FAC ¶ 56. Yet, Xene fails to identify any other airplane program or allege any facts regarding how that airplane's components use the process at issue. This memorandum therefore focuses on the 787 and 777X that were the subject of the initial Complaint, but notes that the absence of plausible allegations, or indeed any non-conclusory allegations of fact, is even more glaring with respect to any other Boeing product. Boeing therefore requests dismissal of these vague, catch-all allegations as well.

9

*a volumetric expansion by foaming of the foamable microcapsules creates a resulting pressure inside said sealed pressure vessel to said carbon or fiberglass composite*; and

(h) allowing said carbon or fiberglass composite to cure at a second temperature that is at least equal to said predetermined first temperature, and while said resulting pressure is being applied to said carbon or fiberglass composite.

*Id.*

Claim 14 is a dependent claim of Claim 11.  That means no infringement of Claim 14 occurs unless all the steps of Claim 11 plus all the additional steps of Claim 14 are performed. *Minn. Min. & Mfg. Co. v. Chemque, Inc.*, 202 F.3d 1294, 1299 (Fed. Cir. 2002).  On top of all the foamable microcapsules steps required for infringement by Claim 11, Claim 14 also requires that the foamable microcapsules "expand at a ratio of greater than 60×." '584 Patent, cl. 14.

### E.  Complexity of Boeing's Accused 787 and 777X Airplanes

As Xene recognizes, the accused airplanes are complex systems that comprise "large, complex composite parts." FAC ¶ 142.  The 787-9 has a length of 206 feet and a wingspan of 197 feet.  FAC Ex. J at 3.  Fifty percent of the primary structure of the 787 is made of composite materials.  FAC Ex. H at 2.  The 777X will be the "largest . . . twin-engine jet in the world due in part to the industry's largest composite wing." *Id.*

Manufacture of these airplanes spans multiple companies and countries.  FAC Ex. E at 3.  Development of the 787 took "[h]undreds of aerospace experts from Boeing and [Boeing's] partners" who "developed everything, including the design, tools that served as the mold, programing for the composite lay-down, and tools that moved the structure into the autoclave." FAC Ex. Q at 3.  And the research and development for the 787 and 777X has been ongoing for decades: the first barrel fuselage section of the 787 was built in December 2004, FAC Ex. R at 2; Ex. N at 5, the first flight of the 787 occurred in 2009, LONG HAUL BY SIMPLE FLYING, *From Start to Finish: How the Boeing 787 Is Made*, at 3:02–3:10 (YouTube, Sept. 2, 2021),

10

https://www.youtube.com/watch?v=CDC0Cd8DP-c    [https://perma.cc/Y9MB-VEHD]    (video cited in FAC ¶ 41), and the 787 entered commercial airline service in 2011, *id*. *See also* FAC ¶¶ 230–31 & n.36 (referencing the April and May 2012 dates of the sixth leg of the 787 Dream Tour launch).

## IV.    ARGUMENT

The FAC's own exhibits, images, and allegations are inconsistent with its conclusory assertion that Boeing uses Xene's patented method, rendering the FAC *im*plausible.  This alone warrants dismissal, and with prejudice.  Even putting this aside, the FAC fails to plead any facts plausibly showing any "foamable microcapsules" have ever been used to manufacture the accused Boeing airplanes, much less that such foamable microcapsules are added to or expanded inside a "mold" to "create[] pressure" against that mold, as Xene's asserted patent Claims 11 and 14 require.  This is an additional, independent ground for dismissal.  Xene adds no factual allegations in its FAC that resolve this fundamental flaw.

To try to get around the fact that its own exhibits debunk any claim of infringement, Xene's infringement theory is not based on an analysis of Boeing's products, as required under patent law, but instead focuses on snippets of unrelated Boeing patents.  Xene apparently thinks that if Boeing owns what it considers to be "similar" patents, that necessarily means that Boeing practices Xene's patent to make parts for the 787 and 777X.  That is an incorrect, unsupported assumption.  Nothing requires Boeing to use its patents at all, much less use the allegedly "similar" portions of them in commercial production of the 787 and 777X.  Xene offers nothing other than a passing conclusory "information and belief" allegation to allege that those unrelated patents "are used" in the manufacture of the accused airplanes.  FAC ¶ 153.  Xene's argument that Boeing's 787 and 777X practice the three Boeing patents is especially implausible where the cited Boeing patents were

11

filed *a decade after* the 787 was designed and launched commercially, and more than five years after the 777X program launch. *See* FAC Ex. R at 2 (describing 787 development in 2004); FAC Ex. M at 2 (indicating 777X program started in 2013); 35 U.S.C. § 102(a)(1) (prohibiting patents on inventions in a "publication, or in public use, on sale, or otherwise available to the public before the effective filing date"). But even if Boeing did practice the referenced portions of the Boeing patents, that does not plausibly mean Boeing infringes Xene's patent, because the cited Boeing patents are different from Xene's patent. Xene's patent comparison is the wrong comparison, ignores the accused products, fails to satisfy the *Iqbal/Twombly* standard, and cannot save its complaint from dismissal. And because Xene's Section 271(b), (g), and willful infringement claims all depend on its insufficient direct infringement allegations, those claims should be dismissed too.

## A. Xene's Section 271(a) Claim for Direct Infringement Should Be Dismissed

Direct infringement of a method patent (like Xene's '584 Patent) under § 271(a) only occurs where "***all*** steps of the claim[ed] [method] are performed" and only when the performance of all those steps is done or "attributable to a single entity." *Heidary v. Amazon.com, Inc.*, 706 F. Supp. 3d 525, 533 (D. Md. 2023), *aff'd*, *Heidary v. Amazon.com, Inc.*, No. 2024-1580, 2024 WL 4489918, at *3–5 (Fed. Cir. Oct. 15, 2024); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). At the pleading stage, Xene's FAC must contain "enough facts" (beyond mere speculation) that, if accepted as true, would establish that Boeing uses the *complete* method, *i.e.*, using foamable microcapsules in the manner required and performing all other steps of the patent claim. The more complex the accused technology, the more detail required. *See Soar Tools*, 2021 WL 3030066, at *7; *Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 3:18-CV-01074-K, 2018 WL 10425908, at *2 (N.D. Tex. Oct. 9, 2018). A patent plaintiff "cannot

12

assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements" requiring foamable microcapsules and other steps "and merely concluding" that the accused products are made according to those elements. *Golden*, 2023 WL 6561044, at *1 (quoting *Bot M8*, 4 F.4th at 1352–53).

No special or element-by-element pleading format is required, but courts should (and do) dismiss patent infringement claims (1) when a complaint includes allegations inconsistent with infringement,[6] (2) when a complaint lacks facts plausibly showing the use of one or more elements of the asserted patent claim(s),[7] (3) when a complaint's allegation that a claim element is used is "conclusory" or "merely track the claim language,"[8] or (4) when the alleged facts supposedly supporting the use of each element are not factually tied to the defendant or the same accused product or accused method.[9] Under these standards, Xene's complaint should be dismissed.

---

[6] *E.g.*, *Bot M8*, 4 F.4th at 1353–54 ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim."); *Wolf Run Hollow, LLC v. State Farm Bank, F.S.B.*, No. 1:12-C-9449, 2013 WL 6182941, at *1–2 (N.D. Ill. Nov. 26, 2013) (granting defendant's motion to dismiss because plaintiff's allegations tended to *disprove* rather than prove infringement such that the allegations could not permit a "reasonable inference" of infringement of the plaintiff's patent).

[7] *E.g., Heidary v. Amazon.com, Inc.*, No. 2024-1580, 2024 WL 4489918, at *3–5 (Fed. Cir. Oct. 15, 2024) (dismissing direct and induced infringement claims for failure to sufficiently allege the accused products "are a complete fire protection system as claimed by the '862 patent")*; Loyal-T Sys. LLC v. Am. Express Co.*, 800 F. Supp. 3d 580, 587–88 (S.D.N.Y. 2025) (dismissing patent infringement claim because complaint "only provide[d] factual support for four of the seventeen elements of [the asserted claim].").

[8] *E.g.*, *Bot M8*, 4 F.4th at 1354–55 (affirming dismissal of infringement claim because "mere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal*/*Twombly* standard"); *Jenkins v. LogicMark, LLC*, No. 3:16-CV-751-HEH, 2017 WL 376154 (E.D. Va. Jan. 25, 2017) (dismissing infringement claim as conclusory).

[9] *E.g.*, *Auth Token*, 817 F. Supp. 3d at 221; *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 499 (W.D. Tex. 2023), *appeal dismissed*, No. 2023-2428, 2024 WL 2587917 (Fed. Cir. May 24, 2024) ("Direct infringement 'requires that each and every limitation set forth in a claim appear in an accused product.'. . . A plaintiff does not satisfy this requirement by 'mixing and matching between different accused products' . . . as '[i]nfringement cannot be shown by a muddled hash of elements from different products.'").

13

1. <u>Xene's Allegations Are Inconsistent with Infringement</u>

Xene's FAC "plead[s] itself out of court" by including allegations that are inconsistent with infringement. *Bot M8*, 4 F.4th at 1352. While Xene's patent claim requires that composite material be pressurized by "foamable microcapsules" *inside* a sealed mold,[10] Xene's own allegations show that Boeing forms its composite structures by wrapping composite material on the *outside* of a mold form (analogous to wrapping paper around an inner cardboard tube). This makes it impossible for any foamable microcapsules inside the mold to pressurize the composite material, as the patent requires.

The allegations that show Boeing wraps its composite on the *outside* of a mold are as follows. Xene's FAC alleges that Boeing "wrap[s] 'a carbon-fiber tape . . . around a rotating mold . . .' as illustrated below."



FAC ¶ 117 (annotation added). Xene alleges that this outer carbon tape wrapped on the outside surface of a large, rotating mold are the "composite" and the "rigid constraining mold" that its

---

[10] As shown above, Claim 11 of the '584 Patent expressly requires "expandable foamable microcapsules" to be "add[ed] to" and "expand[ed]" inside "an *internal volume* of" a "mold" to "create[] a resulting pressure inside . . . to said carbon or fiberglass composite" that has been applied to a wall of that mold. '584 Patent at 30:5–30.

patent claims require.  FAC ¶¶ 116–17; '584 Patent at 30:13.  Xene doubles-down on this position by further alleging that "Boeing's marketing materials reinforce this, describing the 787 as being manufactured with a 'computerized lay-down of composite tape on a huge mold,' as illustrated below":



FAC ¶ 120 (citing FAC Ex. R at 2).

However, since, as Xene itself alleges, Boeing's composite is wrapped onto the *outside* of its accused mold, Boeing would not and could not use foamable microcapsules as required by Xene's claimed method.  A composite lay-up *outside* the accused mold could not be pressurized or shaped by any purported microcapsules "internal" to that mold.  Accordingly, Xene has pleaded itself out of court.

Moreover, the references cited and relied upon in Xene's FAC confirm that Boeing does not use the foamable microcapsules required by the patent claims to make its accused airplanes.  For instance, Xene relies on Exhibit Q to the FAC (in ¶ 119), but that Exhibit describes a process

for wrapping composite tape around a mold that does not mention, and is inconsistent with, the use of foaming, expanding particles to set the composite:

> The barrel section was built in December 2004 after several months of development work. Building the piece, which includes stringers, started with computerized lay-down of composite tape on a huge mold. That mold was mounted on a tool that rotated the barrel as the tape was applied. The structure was then wrapped and placed in Boeing's autoclave for curing. The final step was unwrapping, inspection, and tool removal.

FAC Ex. Q at 3.

The contradictions in Xene's FAC do not stop there. Xene elsewhere alleges that Boeing uses a "'bladder' that provides 'pressure along the inside of a part so that you have a consolidated, compact laminate.'" *See* FAC ¶ 139 (citing a recorded podcast interview of Boeing Research and Technology Senior Manager, Nina Gerber). According to Xene's own allegations, then, Boeing uses something ***different*** from the foamable microcapsules required by Xene's patent claim. *See* '584 Patent cl. 11 (no mention of bladder).[11]

---

[11] Xene does not allege a bladder is the same or otherwise equivalent to foamable microcapsules, nor could it. Instead, without a single supporting factual allegation, Xene merely and in conclusory fashion, states, again "[o]n information and belief, it is not practically feasible to rely on a bladder alone to achieve the required pressure in large, complex composite parts such as those used in Boeing's aircraft. Instead, an internal expansion mechanism—such as foamable microcapsules—is necessary to provide sufficient and uniform pressure throughout." FAC ¶¶ 142–43; *see also id.* ¶¶ 168–69. But this unsupported logical leap is precisely the type of "unwarranted inferences, unreasonable conclusions, or arguments" that need not and should not be accepted on a motion to dismiss. *E.g., Rowe*, 2011 WL 8318390, at *2. Moreover, this allegation by Xene at most pleads that some "internal expansion mechanism . . . is necessary to provide sufficient and uniform pressure throughout." FAC ¶ 143. By choosing to say "such as foamable microcapsules," Xene admits those microcapsules are at best one possible "expansion mechanism" for this. Even if accepted, Xene's theory that the required foamable microcapsules might possibly be used falls far short of the Supreme Court and Federal Circuit's pleading thresholds, which require "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—i.e. that Boeing makes the 787 and 777X airplanes using the method in Claim 11. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *Heidary*, 2024 WL 4489918, at *3.

Claim 11 further requires "closing said constraining mold to create a sealed pressure vessel" and "allowing said . . . composite to cure . . . while said resulting pressure is being applied" by the foamable microcapsules "inside said sealed" mold. '584 Patent at 30:22–35. But the FAC never alleges that Boeing's molds are "clos[ed] . . . to create a sealed pressure vessel," much less that they remain so during the accused curing process. To the contrary, Xene's FAC proves the opposite: It includes two pictures of the accused mold and 787 fuselage component during the curing process that show a massive opening right in their center. *See* FAC ¶¶ 120, 182. The image in FAC paragraph 182 comes from a video that further confirms non-infringement. In that video, including the ten seconds before and after the portion cited in paragraph 182, the accused 787 fuselage components are *hollow* during and after manufacture. *See* REAL ENGINEERING, *How the Boeing 787 Works*, at 03:58–04:30 (YouTube, May 31, 2025) (video cited in FAC ¶ 182). Thus, Xene's own allegations contradict its claims that Boeing uses the patented method, the stated purpose of which is to avoid hollow frames.

Not surprisingly, no foamable microcapsules are anywhere, ***or even alleged by Xene to be anywhere***, inside the pictured molds Xene says Boeing uses. If any foamable microcapsules existed inside the mold as the patent requires, they would be useless for forming the accused Boeing composite because the composite material is located on the outside of that mold.[12]

---

[12] The FAC now alleges the accused products include other composite "parts" of the 787 and 777X, including the "fuselage, wings, winglets, tailfins, nose cones, radomes, floor beams, spars, stringers, ribs, fins, nose, strut assemblies, and other [composite components]," FAC ¶ 57. But this new allegation only compounds Xene's plausibility problem. Beyond images of the fuselage (which confirm noninfringement), Xene provides no factual assertions plausibly showing that any other "parts" in its new list of accused parts infringe. Xene's conclusory allegations regarding these other parts should therefore also be dismissed for failure to state a claim. *See Progenics Pharms., Inc. v. MIM Software Inc.*, 762 F. Supp. 3d. 100, 116 (D. Mass. 2025) ("If, however, the plaintiff fails to plausibly allege that one product is representative of another, it cannot rely on factual allegations about the former product to establish a plausible case of infringement with

These are not "claim construction" disputes, as Xene reflexively argued in opposing Boeing's motion to dismiss Xene's Initial Complaint. They do not depend on a particular construction of any claim term. The allegations and photos in the Complaint illustrate that Boeing's manufacturing process is incompatible with, and the opposite of, the '584 patent's description of the patented method using any plausible understanding of adding "foamable microcapsules" to an "internal volume" of a mold, "closing" that mold to create a "sealed pressure vessel" and causing those "foamable microcapsules" to expand to result in pressure on the composite. The FAC illustrates that there is no seal, no foaming material (in a visibly hollow center), and that the carbon fiber is shaped outside, rather than inside, the mold.

Xene's inconsistent allegations are like the allegations the Federal Circuit dismissed (without requiring formal claim construction) in *Bot M8*. "While a plaintiff need not prove infringement at the pleading stage, here, the [Complaint] contains too much . . . to the point that [the plaintiff] has essentially pleaded itself out of court." 4 F.4th at 1354. In *Bot M8*, the inconsistency was between the patent claim's requirement for two programs to be "stored on the *same* 'board including a memory,' *separate* from the 'motherboard' and its memory," and the plaintiff's allegation that the accused programs were stored on a memory "which is allegedly *in* the [accused] 'motherboard.'" *Id.* The complaint's allegations were therefore incompatible with patented claims, and dismissal was warranted. *Id.*

The result in *Bot M8* and here should be the same: the infringement claims should be dismissed with prejudice. "Under *Iqbal/Twombly*, allegations that are 'merely consistent with'

---

regard to the latter product."); *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 677 F. Supp. 3d 1079, 1085 (N.D. Cal. 2023) (granting motion to dismiss complaint related to certain accused products, noting plaintiff must "provide sufficient allegations from which the Court can plausibly infer that all of Defendants' [accused products] meet every element of at least one claim").

18

infringement are insufficient. . . . Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim." *Id.* Those inconsistent allegations "render[] [the] infringement claim not even possible, much less plausible." *Id.*

> 2. The FAC Fails to Plead Facts Plausibly Showing the Existence of One or More Elements of the Asserted Patent Claim, Substituting Only Inadequate and Conclusory Assertions

Even if the allegations in the FAC were not outright inconsistent with patent infringement, the FAC should be dismissed for failure to plead facts that would plausibly establish patent infringement if accepted as true. Xene's FAC does not plead facts showing that the manufacturing process for the 787 and 777X employs the method required by the '584 Patent. Among other things, the FAC fails to plausibly allege any facts showing that Boeing uses "foamable microcapsules" to manufacture the 787 or 777X, as the patent requires. This alone dooms Xene's claims.

Without any facts that plausibly allege that Boeing uses the required foamable microcapsules to make the accused 787 or 777X parts, Xene makes assumptions and arguments about Boeing's patents. Xene contends that Boeing possesses three patents that contain "similar" or "closely track[ing]" language to the '584 Patent. FAC ¶¶ 87, 189. And Xene further pleads "on information and belief" that Boeing uses these three patents in the manufacture of the 787 and 777X. FAC ¶¶ 95–105, ¶¶ 114–15, ¶¶ 140, 150–54, ¶¶ 172–77. According to Xene, Boeing's assumed practice of "similar" patents necessarily means that Boeing infringes the '584 Patent. But these allegations do not suffice to plead infringement.

*First*, patents do not and cannot infringe other patents. The Patent Act defines an infringer as someone who "without authority makes, uses, offers to sell, or sells any patented invention,

19

within the United States or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271(a).  Filing, obtaining, or owning a patent is not on that list.  The Federal Circuit has rejected the idea of using an opponent's patent documents "that may or may not describe the [accused] product" as evidence of infringement.  *See Forest Lab'ys, Inc.*, 239 F.3d at 1313.  So have other courts.  *E.g.*, *EcoServices, LLC v. Certified Aviation Servs., LLC*, 312 F. Supp. 3d 830, 838 (C.D. Cal. 2018) (In relying so heavily on [comparisons to] the [defendant's patent], [plaintiff's expert] misses the focus of the infringement analysis . . .. '[I]nfringement is determined by construing the claims [of the asserted patent] and comparing them to the accused device . . ..'").

Second, the Boeing patents that Xene cites do not provide any evidence that Boeing infringes the '584 Patent.  Even if the Boeing patents were similar to Xene's patent (they are not, for the reasons discussed below), Xene does not allege facts showing that Boeing actually uses the supposedly similar cited Boeing patents to produce the 787 or 777X. It does not allege that Boeing marks[13] or labels its 787 or 777X airplanes with any of the cited Boeing patents.  Nor does it identify any document or person that has ever said those Boeing patents are used in the 787 or 777X manufacture.  Xene merely concludes without any factual allegations that "[o]n information and belief, Boeing uses" the cited Boeing patents "to manufacture carbon-fiber composite parts for the '584 Accused Products."  FAC ¶¶ 93, 105, 114, 127, 136, 153, 164, 187.  This is the type of conclusory, unsubstantiated pleading that is entitled to no deference and is properly ignored by the Court on a motion to dismiss.  *See Loyal-T Sys.*, 800 F. Supp. 3d at 587–88; *Delphix Corp.*,

---

[13] Patent holders can mark their "article[s]" (physically or via the Internet) with information identifying the patents covering them to put the public on notice of such patents for damages purposes.   35 U.S.C. § 287(a).  It is of no matter that the '584 Patent claims a method of manufacture rather than an article, Xene points to no evidence suggesting the Boeing uses any of the three patents to manufacture its aircraft.

2014 WL 4628490, at *2 (selectively pleading on information and belief "creates a further inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree."). Under *Forest Labs*, it is plain that simply possessing a patent does not justify an assumption that Boeing manufactures a product using that patent. 239 F.3d at 1313.

Moreover, Xene's unsubstantiated inference that Boeing must use the cited patents is belied by the actual images in the FAC and cited in the prior section, and further unreasonable considering Boeing's large patent portfolio. Exhibit T to Xene's own FAC says Boeing was granted thousands of patents in the year 2018 alone. FAC Ex. T at 25. As of July 22, 2026, a search of the USPTO's patent database for "Boeing" as the assignee of granted patents returns 23,363 hits. Ex. 8. It is not reasonable to conclude that Boeing uses the three patents Xene cherry-picked, when Boeing has thousands upon thousands of patents, not all of which are used to make airplanes. And it is especially unreasonable to assume, as Xene's theory requires, that the allegedly "closely tracking" portions of the Boeing patents must be used to make the 787 and 777X airplanes.

The FAC cannot survive a motion to dismiss merely by asserting on information and belief that Boeing applies these three particular patents to its products. *Auth Token LLC*, 817 F. Supp. 3d at 222 ("Plaintiff does not plead nonconclusory, specific facts about CNB's practices that make it plausible to infer that CNB ever adopted the EMV Spec, or that CNB itself performed the claimed method, or that all seven steps can be attributed to CNB. Under *Bot M8* and *Estech*, such allegations do not state a plausible claim for infringement. . . ."); *DigitalDoors, Inc. v. EagleBank*, No. 24-CV-03792-LKG, 2026 WL 554533, at *4 (D. Md. Feb. 27, 2026) ("[P]laintiff cannot rely on compliance with the standard to state a patent-infringement claim when multiple

21

implementations are possible."). The FAC must articulate facts as to why it is reasonable to believe that assertion is true, but Xene pleads no such facts.

*Third*, for each step requiring foamable microcapsules, Xene alleges only that one or more Boeing patents is "similar[]" or "closely tracks" the requirements of the asserted claim of the '584 Patent. *See*, *e.g.*, FAC ¶¶ 100, 103, 189. That is the wrong comparison and is legally insufficient for infringement. Infringement requires that an infringer "make[]" or "use[]" the "patented invention," not merely that the defendant describe ownership of a patent that is "similar" or "close." 35 U.S.C. § 271(a); *see also Forest Lab'ys*, 239 F.3d at 1313.[14] In any event, the '584 is different from Boeing's patents. For instance, the Boeing patents do not require the use of a "foaming agent" like the '584 Patent does; they list a host of other options for making composite parts, such as using a bladder filled with "a liquid, a gas, a super-critical fluid, or a combination thereof." FAC Ex. B ('282 Patent) at 25:44-56; *id*. at 34:54-35:5; FAC Ex. C ('892 Patent) at 18:33-45, 18:16-20; FAC Ex. D ('027 Patent) at 13:11-28. Xene also claims the language of Boeing's '282 Patent Claim 13 is parallel to Xene '584 Patent Claim 11 element (f). *See* FAC ¶ 190 and accompanying table. But that Boeing patent claim requires the "plurality of thermally

---

[14] Although Plaintiff includes a boilerplate "or through the doctrine of equivalents" clause in its FAC's infringement assertions, (FAC ¶¶ 78-79) merely alleging that Boeing has certain "similar" or "closely tracked" language in its patent does not come close to pleading facts that would plausibly establish that basis for liability. Xene makes no effort to plead facts that would establish that any method Boeing uses contains "substitute" steps that "match[] the function, way, and result" of the missing claimed steps. *Lab'y Corp. of Am. Holdings v. Qiagen Scis., LLC*, 148 F.4th 1350, 1359 (Fed. Cir. 2025) ("Liability under the doctrine [of equivalents] 'is the exception' and 'not the rule.'" The test is limitation-specific, and "[t]o determine whether the accused element is an equivalent to a claim limitation, we ask 'whether a substitute element matches the function, way, and result of the claimed element.'"); *Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*, No. CV 20-333-GBW-CJB, 2023 WL 7125196, at *5 (D. Del. Oct. 30, 2023), *report and recommendation adopted in part*, No. CV 20-333-JLH-CJB, 2024 WL 4512400, (D. Del. Oct. 17, 2024)."

22

expandable pellets are in *direct contact* with a wall of [a] constraining container," *i.e.*, there is no composite between that wall and the pellets. *Id.* This is different from and in conflict with the Xene patent claim, which requires foamable microcapsules to create pressure on a composite that is applied to a wall of the mold. *See*, *e.g.*, '584 Patent at Figs. 9a–9b; *id.* at 30:14–15 (Claim 11, element (d)). Xene also claims language of Boeing's '282, '892 and '027 Patents about "foamable *pellets*" and a "*container*" "closely tracks Claims 11 of the '584 Patent," FAC ¶¶ 96-104, but Xene's Claim 11 recites foamable *microcapsules*, and a *constraining mold*, not mere "pellets" or "containers." '584 Patent at Claim 11.

*Fourth*, Xene's inference that Boeing uses the allegedly similar portions of the Boeing patents to manufacture the accused 787 and 777X airplanes cannot be reconciled with Xene's allegations in its FAC. The Boeing patents are expressly intended to avoid use of industrial autoclaves, which the patents say can create production "bottleneck[s]." FAC Ex. C ('892 Patent) at 1:33–39. Yet Xene repeatedly alleges Boeing uses autoclaves in its manufacture of the accused 787 and 777X airplanes. FAC ¶¶ 109, 140, 167, 180-82; *see also* FAC Ex Q at 3–4; FAC Ex. T at 23; FAC Ex. U at 2.

Moreover, the mold and composite arrangement Xene describes and illustrates in the FAC is inconsistent with both the '584 patent and the Boeing patents. According to the FAC exhibits, Boeing places the composite material *outside* the mold (*supra* Section IV.A.1); by contrast, in the cited Boeing patents, the composite is *inside* the alleged mold. And instead of being "sealed" during the curing process, as the '584 Patent requires Xene's own allegations and exhibits show a gaping hole in the mold it says Boeing uses. *Supra* Section IV.A.1; FAC ¶ 182.

These contradictions preclude a plausible inference that Boeing uses the cited Boeing patents or the claimed method in its 787 or 777X manufacturing. *See Bot M8*, 4 F.4th at 1354.

23

Indeed, the weakness of Xene's approach—relying on unrelated Boeing patents to implausibly suggest that Boeing infringes its patent, instead of pleading facts regarding how the accused airplanes are actually made—is underscored by the dearth of cases in which plaintiffs have attempted to blaze that path.[15]

### 3. Xene's New Claim 14 Allegations Are Equally Implausible

In support of Xene's argument that Boeing infringes Claim 14 of the '584 Patent, Xene points to an import record purporting to show that a third party (TMX Aerospace), allegedly related to Boeing, imported a quantity of Nouryon's "Expancel." FAC ¶¶ 192–197. According to Xene, this Expancel material is a type of microcapsule that has an expansion ratio of 64x, thereby satisfying Claim 14's additional requirement that the foamable microcapsules have an expand ratio of "greater than 60x." *Id.*; '584 Patent, cl. 14.

But importing a material does not plausibly suggest that the material is used to make composite parts for the Boeing 787 and 777X aircraft, much less in a sealed mold and according to all the steps the '584 Patent claims require. Expancel products are widely used across dozens of industries for applications entirely unrelated to the '584 Patent's method of shaping carbon-

---

[15] The located cases dealing with attempts to plead infringement via the defendant's patents, both from the District of Delaware which does not control this Court, are distinguishable. In a critical difference from the situation here, *VTT Tech. Rsch. Ctr. of Finland Ltd. v. Teledyne Flir, LLC*, No. CV 25-348, 2025 WL 2576383 (D. Del. Sept. 5, 2025), the accused products were marked with the patent number of the defendant's patent that contained the alleged similarities—a representation by the defendant that the accused product practiced that patent. *Id.* at *2; *see also* 35 U.S.C. § 287(a). And in *TexasLDPC Inc. v. Broadcom Inc.*, No. 1:18-CV-1966-SB, 2021 WL 1092578, at *1 (D. Del. Mar. 22, 2021), one of the allegedly overlapping patents' named inventors had said things indicating his patents may relate to the defendant's products. Furthermore, unlike this case, neither of these cases involved complaints containing internally inconsistent allegations, or that attempted to allege infringement by mixing and matching descriptions that are not all tied to the accused manufacturing process. Nothing in Xene's FAC provides further indication that Boeing uses any one of these three patents in its aircraft manufacture.

fiber composite parts, including paper and board manufacturing, printing inks, automotive underbody coatings, shoe soles, and general weight-reduction applications. Ex. 9 at 8. Xene's theory requires the Court to stack inference upon inference—from importation, to use in manufacturing of particular products, to use in the particular composite shaping method claimed in the '584 Patent—without any factual allegations supporting these inferences. Such "naked assertions devoid of further factual enhancement" are precisely the type of pleading that *Iqbal* holds insufficient. 556 U.S. at 678; *Auth Token*, 817 F. Supp. 3d 211, 222.

Where an "obvious alternative explanation" exists for the alleged conduct—i.e. the alleged infringer imported it for something else—the complaint must include additional factual matter to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 567, 570. Xene pleads no facts suggesting that the imported microcapsules were delivered to a facility that manufactures composite aircraft parts, that they were used in a thermal expansion process consistent with the '584 Patent method, or that they were incorporated into any accused product. Absent such factual content, the FAC offers nothing more than speculation dressed as inference and should be dismissed.[16]

4. Dismissal Is Especially Warranted Here Considering the Accused Airplanes' Complexity

When the technology at issue is complex, more detailed factual pleading is required. *See Soar Tools, LLC*, 2021 WL 3030066, at *7; *Lexington Luminance*, 2018 WL 10425908, at *2 (requiring plaintiff to replead infringement allegations because claim limitations were directed to "complicated technology" and plausible inference that those complicated limitations were met could not be drawn without additional factual support). Commercial airplane fabrication—a

---

[16] While the Court need not consider on a Motion to Dismiss, this purported import record on which Xene relies is inaccurate, as Boeing has explained elsewhere. Dkt. 55 at 4-5.

25

process that involves thousands of employees, advanced materials, complex designs, years of work, and global supply chains—is the epitome of complex technology. Xene's infringement theory requires that Boeing or its suppliers perform all the steps required by the '584 Patent, including the use of foamable microcapsules. Yet Xene's allegations read as if it were accusing a simple device, offering only high-level generalities divorced from the intricacies of Boeing's manufacturing environment. Xene's FAC glosses over the critical foamable microcapsule steps and simply speculates they are used based on the existence of allegedly similar language in Boeing patents. But that theory is pure guesswork, and conflicts with Xene's other allegations about the processes and equipment Boeing actually uses to manufacture its accused airplanes.

While the pleading standard remains the same regardless of complexity, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology." *Bot M8*, 4 F.4th at 1353. Where, as here, there is greater complexity in the technology and products at issue, more factual allegations are needed to put Boeing on notice of Xene's infringement allegations and demonstrate facial plausibility of the claims under the existing pleading standard. *Soar Tools*, 2021 WL 3030066, at *7. The FAC is not adequate to survive a motion to dismiss even with respect to a simple product but is particularly inadequate under the circumstances here.

\* \* \*

Because Xene's FAC lacks non-conclusory allegations plausibly showing that Boeing performs every step of Claim 11 (and Claim 14)—including the use of foamable microcapsules, as the patent requires—Xene's direct infringement claim falls well short of the *Iqbal*/*Twombly* standard and must be dismissed.

26

### B.    Xene's Section 271(b) Claim Should Be Dismissed

Xene's § 271(b) induced infringement claim should similarly be dismissed because it is entirely derivative of its direct infringement allegations, which are themselves insufficiently pleaded.  As the Federal Circuit has held, "[w]ithout a predicate finding of direct infringement, there can be no finding of induced infringement." *Heidary*, 2024 WL 4489918, at *5.  Where, as here, the FAC fails to allege plausibly that Boeing or any other entity performs every step of the asserted method claim, the induced infringement claim cannot stand.  *Id.* ("Because [plaintiff] failed to adequately plead direct infringement, . . . [plaintiff's] induced infringement claim necessarily fails.") (quotation marks omitted).  Because Xene's FAC does not state a plausible claim for direct infringement, its induced infringement claim under § 271(b) is likewise deficient and must be dismissed.

Nor does Xene save itself by turning all its allegations into the passive voice.  *Compare, e.g.,* Compl. ¶ 87 ("***Boeing uses*** the [Boeing patents]"), *with* FAC ¶ 93 ("[Boeing patents] ***are used***").  This effort only creates even more vagueness and implausibility: Xene alleges that someone, somewhere, allegedly at Boeing's direction uses Boeing's patents to manufacture the accused products, but the FAC fails to identify any particular party or plead facts showing how that process would satisfy the requirements of the '584 Patent.

### C.  Xene's Section 271(g) Claim Should Be Dismissed

Xene's § 271(g) infringement claim must also be dismissed for the same reasons as its direct infringement claim under § 271(a).  Because "liability under § 271(g) is subject to the same pleading standard as direct infringement under § 271(a)," a § 271(g) claim similarly requires plausible factual allegations that the accused product is made by a process practicing every step of the asserted method claim.  *See Anza Tech., Inc. v. D-Link Sys., Inc.*, No. 316-CV-01263-BEN-

27

AGS, 2016 WL 8732647, at *4 (S.D. Cal. Nov. 4, 2016).  The Supreme Court has made clear that "[a] method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out" and requires a showing that every step of the claimed method has been practiced.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014).  Because Xene's FAC fails to plausibly allege that Boeing performs every step of the patented process, its § 271(g) claim necessarily fails as well and should also be dismissed.

### D.  Xene's Willful Infringement Claim Should Be Dismissed

Xene's willful infringement claim is predicated on the same conclusory and unsupported allegations as its direct infringement claim.  The FAC merely recites that Boeing had knowledge of the '584 Patent and continues to infringe it, FAC ¶ 246, but fails to provide any non-conclusory facts showing that Boeing actually performs every step of the asserted method claim, let alone does so in a manner that is "willful," "egregious," or "deliberate" as is required.  FAC ¶¶ 200, 235–257; *see, e.g.*, *Golden v. Google LLC*, 2025 WL 1752485, at *3 (Fed. Cir. June 25, 2025); *see also BlackBerry Ltd. v. Nokia Corp.*, No. 17-CV-155-RGA, 2018 WL 1401330, at *3 (D. Del. Mar. 20, 2018).

And, as discussed above, *supra* § IV.A, the FAC's own allegations and cited materials contradict the assertion that Boeing practices the claimed method at all, much less that it infringes willfully.  *Golden v. Google LLC*, 2025 WL 1752485, at *3; *BlackBerry*, 2018 WL 1401330, at *3; *CTD Networks, LLC*, 688 F. Supp. 3d at 504.

### V.    CONCLUSION

For the foregoing reasons, Xene's FAC for infringement of the '584 Patent should be dismissed in its entirety with prejudice.

Dated: July 22, 2026              Respectfully submitted:

                                    */s/ Stephen E. Noona*
                                    Stephen E. Noona (VSB No. 25367)
                                    KAUFMAN & CANOLES, P.C.
                                    150 W. Main Street, Suite 2100
                                    Norfolk, VA  23510
                                    Telephone:  757-624-3239
                                    Facsimile:  888-360-9092
                                    stephen.noona@kaufcan.com

                                    Gregg F. LoCascio, P.C. (VSB No. 38908)
                                    Sean McEldowney
                                    KIRKLAND & ELLIS LLP
                                    1301 Pennsylvania Avenue, N.W.
                                    Washington, DC  20004
                                    Telephone:  202-389-5000
                                    gregg.locascio@kirkland.com
                                    sean.mceldowney@kirkland.com

                                    Amanda Hollis, P.C.
                                    KIRKLAND & ELLIS LLP
                                    333 West Wolf Point Plaza
                                    Chicago, IL  60654
                                    Telephone:  312-862-2011
                                    amanda.hollis@kirkland.com

                                  *Counsel for Defendant, The Boeing Company*

29

## CERTIFICATE OF SERVICE

I certify that on July 22, 2026, in accordance with the Federal Rules of Civil Procedure, a true and correct copy of the above and foregoing document was served on all registered counsel of record via the Court's PACER ECF system.

 */s/ Stephen E. Noona*
Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  888-360-9092
stephen.noona@kaufcan.com

*Counsel for Defendant, The Boeing Company*