# EXHIBIT C

REDACTED

**From:** Tara Zurawski <tzurawski@bdiplaw.com>
**Sent:** Thursday, August 27, 2026 10:28 AM
**To:** Dirks, Steven; Andres Healy; Rebekah Greene; Stuart Pollack; Ryan Weiss; Jo Un Eom; Elliot B. Robinson; Sarah Siegel; Michelle Wimmer
**Cc:** #KE-Boeing-Xene; Noona, Stephen E.
**Subject:** RE: Xene v. Boeing: 8/24 Meet and Confer Memorialization
**Attachments:** RE: Xene v. Boeing

EXTERNAL Email

Counsel,

We write to correct several aspects of Boeing's characterization of the August 24 meet and confer. At the outset, we note that Boeing sent this purported memorialization *after* filing its motion to compel. It is not a neutral memorialization of the parties' discussion and, in several respects, does not accurately reflect what occurred.

The timing is also significant. As addressed separately, Boeing filed its motion while the meet-and-confer process remained ongoing, including on issues for which Xene had expressly agreed to investigate and report back. Boeing's post-filing characterization of the August 24 discussion does not alter that chronology or establish that the parties had reached an impasse on the disputes Boeing presented to the Court.

We therefore respond to the points requiring correction below. Additionally, see our comments in line below in yellow.

**Claim Construction**

Boeing's characterization of the claim-construction discussion is incomplete and, in several respects, inaccurate. Xene repeatedly explained that its proposed construction of the disputed terms is their plain and ordinary meaning and that the parties' dispute concerns Boeing's attempt to append additional language and limitations to those terms. To the extent Boeing now characterizes Xene's acknowledgment of particular aspects of the claim language as agreement with Boeing's proposed constructions, that is incorrect. Xene maintained its plain-meaning position. Xene also does not agree with Boeing's characterization that Xene conceded during the call that the preamble is limiting.

Xene repeatedly asked Boeing to identify the specific support for the additional language it proposes and to explain why that language should be imported into the claims. Boeing declined to engage at that level and instead referred generally to the intrinsic record and its prior correspondence. Xene likewise declined to undertake a generalized discussion of the entire intrinsic record untethered to Boeing's specific proposed constructions. Xene's point was not simply whether Boeing's proposed language could be described as

"consistent" with portions of the intrinsic record, but whether the claim language requires Boeing's proposed additions.

In short, Boeing would not specifically articulate the claim-construction basis for the language it sought to add, while continuing to press Xene to further define terms for which Xene had consistently asserted plain meaning. The discussion therefore ceased to be productive, and Xene said so.

We specifically disagree with Boeing's characterization of the exchange concerning prosecution-history disclaimer as "derogatory" or presenting a civility issue. The exchange arose because Boeing was taking positions that caused confusion as to whether and how Boeing was invoking the principles of prosecution-history disclaimer or disavowal while declining to articulate a specific basis for its proposed construction.

Finally, Boeing's statement that its constructions are "fully supported" by the claim language, specification, and prosecution history merely repeats the same generalized assertion Boeing made during the call. Xene asked Boeing to identify the specific support for its proposed additions; Boeing did not do so. Boeing's post hoc characterization does not change what occurred: the parties identified their disagreement, were unable to narrow it further, and agreed to disagree.

**Claim Narrowing**

Boeing's characterization conflates the narrowing required by the Scheduling Order with Boeing's attempt to use the meet and confer to interrogate Xene about its infringement contentions and whether Xene intended to amend them. Those issues were not identified in advance as subjects for the call. The Scheduling Order required the parties to meet and confer regarding narrowing the number of asserted claims and invalidity references. When Xene attempted to address that required narrowing, Boeing did not meaningfully engage on those issues and instead pressed Xene regarding its infringement contentions, including which products Xene intended to accuse and whether Xene would amend its contentions.

Xene confirmed that it continues to accuse the products discussed on the call and explained that discovery remains ongoing. Xene also expressly reserved its rights as discovery proceeds. Xene did not agree that Boeing could use a meet and confer directed to the narrowing required by the Scheduling Order to force premature amendments to Xene's infringement contentions or concessions concerning its infringement case.

The timing matters. The Court set October 23 as the deadline for final infringement and invalidity contentions; fact discovery remains ongoing; and expert discovery has not yet begun. Xene therefore declined Boeing's effort to turn the narrowing discussion into a premature examination of Xene's evolving infringement case and instead adhered to the process and deadlines established by the Scheduling Order.

With respect to Expancel, Xene did not concede that there is no evidence connecting Expancel to the accused aircraft or components and expressly disagreed with Boeing's characterization of the evidence. Xene has only recently begun receiving discovery bearing on the use of Expancel and is actively pursuing related third-party discovery. Xene's investigation therefore remains ongoing.

The same is true of SynSpand. Xene explained that its existing infringement contentions identify examples of suppliers and microcapsules and are not limited to those examples. Xene therefore disagreed that SynSpand constitutes a new infringement theory requiring immediate supplementation. Xene's final infringement contentions are not yet due, and there is ample time to incorporate information obtained through ongoing discovery into those contentions and to supplement earlier if necessary. Xene's Complaint and current infringement contentions adequately state its infringement theories at this stage of the case.

More fundamentally, Boeing's demand that Xene amend its infringement contentions now is premature. Xene's ability to further develop those contentions necessarily depends in significant part on discovery from Boeing and third parties concerning the materials and processes used to manufacture the accused components. Boeing's delays in providing relevant discovery cannot be used simultaneously to impede Xene's investigation and then demand that Xene prematurely finalize its infringement theories before that discovery is complete. Xene expressly reserved its rights as discovery continues and will supplement its contentions as appropriate and consistent with the Scheduling Order.

Boeing's own description confirms another problem with its characterization of the call. The Scheduling Order required the parties to meet and confer regarding narrowing the number of asserted claims and invalidity references. Xene attempted to address that required narrowing, but Boeing did not meaningfully engage regarding what claims or invalidity references could be narrowed. Instead, Boeing stated that it would narrow its invalidity references in accordance with the Scheduling Order and redirected the discussion to Xene's infringement contentions, including whether Xene would amend them and its positions concerning Expancel and SynSpand. Those are different issues. If Boeing believed the parties were required to meet and confer regarding narrowing under the Scheduling Order—as the Order expressly provides—Boeing should have substantively engaged in that discussion rather than simply stating that it would comply with the Order later.

Boeing's assertion that Xene's refusal to amend its preliminary infringement contentions during that discussion somehow prejudices Boeing's ability to narrow its invalidity references is misplaced. Xene's final infringement contentions are not yet due, discovery concerning Expancel and SynSpand remains ongoing, and Xene expressly reserved its rights to incorporate that discovery and supplement as appropriate. Boeing's obligation to

participate in the narrowing process required by the Scheduling Order did not depend on Xene first agreeing to amend its infringement contentions on Boeing's timetable.

**Boeing's Suppliers**

Xene disagrees that this dispute is resolved. As Xene explained during the meet and confer, [redacted]

The discussion during the meet and confer highlighted rather than resolved the problem. Boeing offered several different explanations for why it had not identified the manufacturers of the specific supplier-made parts, including burden, its contention that the previously produced diagrams constituted supplier information, and, for the first time, that a Boeing supplier may outsource manufacture of a part to a downstream manufacturer that Boeing does not track.

That disclosure was particularly surprising because it was never raised when the parties, at the Court's direction during the motion-to-compel hearing, discussed and ultimately agreed upon a sampling approach for supplier-made parts. That compromise necessarily depended on Xene having adequate information to identify the suppliers associated with the selected parts and pursue discovery concerning those parts. At no point during those discussions did Boeing suggest that the entities it identified as suppliers might not actually manufacture the parts, that manufacturing could occur through unidentified downstream entities, or that Boeing could not identify the actual manufacturer. If Boeing cannot adequately identify the manufacturers associated with the sampled parts, the premise underlying the parties' compromise may need to be revisited with the Court.

During the August 24 meet and confer, Xene specifically asked Boeing what it could provide to identify the suppliers associated with the particular supplier-made parts, and Boeing agreed to follow up with more specific information. Boeing has not provided a substantive response to that inquiry. Instead, in this post-filing memorialization, Boeing cites [redacted] and unilaterally states that it "understands this to resolve the dispute."

Xene does not understand how those documents resolve the dispute regarding suppliers. [redacted] At the meet and confer, Boeing had represented that it would identify which part numbers fall within certain assemblies. [redacted]

Boeing's production does not, by itself, resolve the broader issue of identifying the entities that actually manufacture the supplier-made parts, particularly in light of

Boeing's newly stated position concerning downstream manufacturers. Xene therefore does not agree that this dispute is resolved.

**Damages**

Boeing's characterization is incomplete. Boeing has not yet produced damages discovery. Xene agreed to discuss reasonable narrowing of its damages requests and to continue the meet-and-confer process by walking through the requests individually. Xene did not agree with Boeing's characterization that its requests are "incredibly broad."

Xene remains willing to discuss reasonable narrowing of the requests, as the parties agreed. That process remains ongoing.

**Motion to Amend**

Xene generally agrees with Boeing's description of this portion of the discussion.

BD IP BUNSOW DE MORY LLP
Celebrating 10 Years

Tara R. Zurawski
*Counsel*
**Bunsow De Mory LLP**
+1703-828-4019 o | +1-415-426-4744 f

277 S Washington St. Suite 210, #1088 Alexandria, VA 22314

www.bdiplaw.com | tzurawski@bdiplaw.com

**From:** Dirks, Steven <steven.dirks@kirkland.com>
**Sent:** Wednesday, August 26, 2026 10:13 PM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Rebekah Greene <RGreene@susmangodfrey.com>; Stuart Pollack <SPollack@susmangodfrey.com>; Ryan Weiss <RWeiss@susmangodfrey.com>; Tara Zurawski <tzurawski@bdiplaw.com>; Jo Un Eom <JEom@susmangodfrey.com>; Elliot B. Robinson <erobinson@bdiplaw.com>; Sarah Siegel <sarahsiegel@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>
**Cc:** #KE-Boeing-Xene <ke-boeing-xene@kirkland.com>; Noona, Stephen E. <stephen.noona@kaufcan.com>
**Subject:** Xene v. Boeing: 8/24 Meet and Confer Memorialization

**[EXTERNAL]**

Counsel,

We write to memorialize certain positions discussed on the parties' August 24, 2026 meet and confer.

**Claim Construction**

1. Xene declined to accept either of Boeing's proposed constructions.
2. Xene acknowledged that the claims require that the foamable microcapsules encapsulate a foaming agent that must expand to exert pressure.
   [Xene: To be clear, we stated that other limitations require "supplying thermally expandable foamable microcapsules, said microcapsules encapsulating a foaming agent" and "causing a plurality of said foamable microcapsules to expand by heating said foamable microcapsules to above or at the predetermined first temperature, so that a volumetric expansion by foaming of the foamable microcapsules creates a resulting pressure inside said sealed pressure vessel to said carbon or fiberglass composite." We stated that we disagreed with your proposed constructions.]
3. Xene did not dispute that the preamble is limiting on the call. [Xene: This is incorrect. We did not discuss this. Regardless, we do not agree that the preamble is limiting.]
4. Xene contends that Boeing's proposed language should not be added to the claim terms.
5. Xene did not identify any inconsistencies between Boeing's proposed constructions and the specification or prosecution history. [Xene: This is incorrect. We stated that the point was not relevant for the reasons you noted in item #6 below.]
6. Xene contended that just because Boeing's construction was consistent with the specification does not mean the claim language requires what Boeing is suggesting.
7. Xene rhetorically asked if Boeing needed help understanding prosecution history disclaimer in a derogatory manner. Boeing requested that Xene maintain civility in its meet and confers going forward.
   [Xene: This is blatantly false and your meritless assertion is unfortunately characteristic of Boeing's conduct in this matter.]
8. Boeing indicated that its proposed constructions are fully supported by the claim language itself and in light of the specification and prosecution history, and did not contend that there was no disavowal or disclaimer.

**Claim Narrowing**

1. Xene's infringement case:
   1. Expancel:
      1. Xene indicated it still intends to pursue an infringement theory based upon Boeing's alleged use of Expancel.
      2. Boeing pointed out Xene has not yet pointed to any part of the accused aircraft made using Expancel. Xene disagreed but still did not point to any part made using Expancel or any document or witness that even allegedly says Expancel has been used to manufacture any of the accused aircraft parts.[Xene: This is incorrect. We pointed you to our contentions as providing examples.]
      3. Xene maintains its position despite Nouryon's representation that it does not sell Expancel to Boeing. When asked for Xene's position on Nouryon's representation, Xene merely stated "we disagree." [Xene: This is incorrect. We further noted the invoice Boeing had produced and noted that discovery was ongoing.]
   2. Synspand:
      1. Xene indicated it now intends to accuse some alleged use of Synspand as some form of infringement. [Xene: This is incorrect. We stated that Synspand includes microcapsules and that Boeing's use of such material thus has always been accused.]
      2. Boeing requested Xene's contentions as to how Synspand falls within the scope of the claim language (e.g., how Synspand is a "thermally expandable foamable microcapsule" as well as how its use would meet the other claim limitations), and how Boeing's alleged use of Synspand infringes the asserted claims. Xene disagreed, and indicated that it will not provide supplemental infringement contentions either to disclose its reliance on Synspand or to elaborate on its infringement theory before the final contention deadline provided by the Court. Xene argued its contentions identify examples of suppliers of microcapsules,

that those examples are not limiting, and that Synspand therefore falls within the scope of Xene's contentions. Xene conceded its current infringement contentions do not mention Synspand by name or describe the use of Synspand. . [Xene: This is incorrect. We stated that Synspand is an example of thermally expandable foamable microcapsule and that Boeing's use of such material thus has always been accused. We also explained that our theories as to the use of such material already is detailed in our contentions. To the extent you are aware of any authority for your apparent position that contentions must identify brand names of materials (particularly when a defendant clearly is on notice of them being at issue), please provide it.]

2. Boeing's invalidity case:
    1. Boeing indicated it intends to narrow its invalidity references in compliance with the Court's Scheduling Order.
    2. Boeing noted that Xene's refusal to supplement its infringement contentions, including to explain its contention as to how Synspand falls within the scope of the claim limitations prejudices Boeing's ability to proffer its invalidity contentions. [Xene: This is incorrect. Please explain the purported prejudice, particularly given your admission in #3 below.]
    2. Boeing stated that if Xene intends to rely on Synspand as an infringement theory, Boeing will supplement its invalidity contentions. Xene stated that Boeing may do so.

**Boeing's Suppliers**

1. [redacted] Nonetheless, Boeing indicated that it would consider Xene's request to identify how the part numbers correlate to the assemblies, which Boeing has now done. [redacted] Boeing understands this to resolve the dispute. Xene: This is incorrect. See our response above. See also our attached email.]

**Damages**

1. Boeing indicated that, while it is not wholesale denying production and willing to produce some requested information, the requests as written were incredibly broad. Therefore, Boeing requested clarity on Xene's intended scope of its damages-related requests.
2. Looking at RFP 27, as an example, Boeing stated that "composite process innovations" could be interpreted extremely broadly and asked Xene whether "composite process innovations" could be limited to microcapsule processes. Xene expressed willingness to compromise to Boeing's proposed limitation.
3. Xene agreed it would be willing to walk through the RFPs and offer narrowing proposals.
4. The parties agreed to a second meet and confer to walk through each of the damages-related document requests at issue wherein Xene would provide narrowing proposals.

**Motion to Amend**

1. Xene indicated that its opposition to Boeing's motion to strike would include (1) a request in the alternative for the Court to convert Xene's Second Amended Complaint into a Motion for Leave to Amend under Rule 15(a)(2) and (2) a request in the alternative for 7 days to respond to our Motion to Dismiss Xene's First Amended Complaint (should the Court grant our motion to strike and deny Xene's request for leave to amend).
2. Boeing indicated it would likely not consent but would follow up if it were willing to give consent.

Best,

**Steven Dirks**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389 3024 **M** +1 202 531 9787
**F** +1 202 389 5200

steven.dirks@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.