# EXHIBIT D

REDACTED

**From:** Tara Zurawski <tzurawski@bdiplaw.com>
**Sent:** Friday, September 4, 2026 9:48 AM
**To:** Steven Dirks
**Cc:** #KE-Boeing-Xene; Amanda Hollis; Stephen E. Noona; Gregg F. LoCascio; Kelly Tripathi; Andres Healy; Stuart Pollack; Ryan Weiss; Rebekah Greene; Jo Un Eom; Sarah Siegel; Xene_Boeing
**Subject:** Re: Xene v. Boeing - request to meet and confer regarding Dr. Gross deposition

EXTERNAL Email

Steven,

Thank you for your email and Boeing's responses. We will be filing a motion for an extension of the sampling deadline today and will note Boeing's opposition.

It is unfortunate that we could not reach agreement on this limited extension. Dr. Gross's testimony on these issues is clear, and counsel's characterization of that testimony does not change the record or resolve the issues her testimony raised.

Regards,
Tara

On Sep 4, 2026, at 1:03 AM, Dirks, Steven <steven.dirks@kirkland.com> wrote:

**[EXTERNAL]**

Tara,

Please see our responses to 1, 2, and 6 below. We will address 3-5 under separate cover.

Best,

**Steven Dirks**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389 3024 **M** +1 202 531 9787
**F** +1 202 389 5200

steven.dirks@kirkland.com

---

**From:** Tara Zurawski <tzurawski@bdiplaw.com>
**Sent:** Thursday, September 3, 2026 2:22 PM
**To:** Dirks, Steven <steven.dirks@kirkland.com>; #KE-Boeing-Xene <ke-boeing-xene@kirkland.com>; Hollis, Amanda <ahollis@kirkland.com>; Stephen E. Noona <stephen.noona@kaufcan.com>; LoCascio, Gregg F. <glocascio@kirkland.com>; Tripathi, Kelly <kelly.tripathi@kirkland.com>
**Cc:** Andres Healy <AHealy@susmangodfrey.com>; Stuart Pollack <SPollack@susmangodfrey.com>; Ryan Weiss <RWeiss@susmangodfrey.com>; Rebekah Greene <RGreene@susmangodfrey.com>; Jo Un Eom <JEom@susmangodfrey.com>; Sarah Siegel <sarahsiegel@susmangodfrey.com>; Andres Healy

<ahealy@susmangodfrey.com>; Xene_Boeing <Xene_Boeing@bdiplaw.com>
**Subject:** RE: Xene v. Boeing - request to meet and confer regarding Dr. Gross deposition

Apologies – the email below should have referenced yesterday's meet and confer. Corrected below.

Kindly,
Tara

<image001.png> Tara R. Zurawski
*Counsel*
**Bunsow De Mory LLP**
+1703-828-4019 o | +1-415-426-4744 f

277 S Washington St. Suite 210, #1088 Alexandria, VA 22314

www.bdiplaw.com | tzurawski@bdiplaw.com

---

**From:** Tara Zurawski
**Sent:** Thursday, September 3, 2026 2:18 PM
**To:** 'Dirks, Steven' <steven.dirks@kirkland.com>; '#KE-Boeing-Xene' <ke-boeing-xene@kirkland.com>; 'Hollis, Amanda' <ahollis@kirkland.com>; 'Stephen E. Noona' <stephen.noona@kaufcan.com>; 'LoCascio, Gregg F.' <glocascio@kirkland.com>; 'Tripathi, Kelly' <kelly.tripathi@kirkland.com>
**Cc:** 'Andres Healy' <AHealy@susmangodfrey.com>; 'Stuart Pollack' <SPollack@susmangodfrey.com>; 'Ryan Weiss' <RWeiss@susmangodfrey.com>; 'Rebekah Greene' <RGreene@susmangodfrey.com>; 'Jo Un Eom' <JEom@susmangodfrey.com>; 'Sarah Siegel' <sarahsiegel@susmangodfrey.com>; 'Andres Healy' <ahealy@susmangodfrey.com>; 'Xene_Boeing@bdiplaw.com' <Xene_Boeing@bdiplaw.com>
**Subject:** RE: Xene v. Boeing - request to meet and confer regarding Dr. Gross deposition

Steven,

Thank you for meeting and conferring with us yesterday. During the call, Boeing asked Xene to identify more specifically the deficiencies it contends exist with respect to the parts list that Boeing provided, as well as with Boeing's production of Controlling Engineering Documents and other technical materials (manufacturing plans, supplier information, etc.) relevant to the Court-ordered sampling process. We set out those issues below. Given the approaching discovery and sampling deadlines, we would appreciate Boeing's response as to our extension request (item #6 below) **by close of business today**. We also would appreciate a substantive response on the remaining items **by September 9.**

1. **Parts List and Sampling**

As we discussed yesterday, the parts list Boeing provided is not sufficient to permit Xene to make the selections contemplated by the Court-ordered sampling process.

In particular, at the July 30 hearing, the Court specifically questioned whether the 900-page parts list Boeing had provided was sufficient to allow Xene to identify particular parts. July 30 Hr'g Tr. 19:10–20. In response, Boeing represented that the list contained approximately 20,000 existing part numbers across the 787 and 777X, approximately half supplier-manufactured and half Boeing-manufactured. *Id.* at 34:18–35:16. The sampling process ultimately adopted by the Court contemplated Xene identifying specific parts for which supplier manufacturing plans would be obtained. *See id.* at 65:25–67:9.

Dr. Gross's subsequent testimony raises a fundamental problem with using the list Boeing provided for that purpose. [redacted]

[redacted]

When we pressed Boeing on these points on our meet and confer, you expressed confusion as to why a list of future parts was not sufficient. [redacted] In short, to select from among 50 existing parts, we plainly need a list of existing parts.

Accordingly, as we explained in the meet and confer, Xene requests that Boeing immediately provide a list of parts actually manufactured during the relevant period, rather than a list of future parts. The scope and parameters of that request are the same as those Boeing applied in creating the future-parts list it provided; the difference is that Xene needs the actual/historical parts associated with the accused aircraft. Please confirm whether Boeing will provide that information, including the current program-specific parts information and program-maintained parts lists that Dr. Gross identified as existing for the 787-10 and 777-8.

[Boeing: Boeing has provided Xene the only thing the parties agreed it needed to provide as part of the agreed-upon sampling plan: "On August 5, 2026, Boeing sent Xene a version of the part numbers list [Ex. 11 to Dkt. 82] that identifies which part numbers are supplier-made parts." Dkt. 118 at 1. And there are no deficiencies in what Boeing provided to satisfy that obligation. As Xene

admitted in the language of the parties' joint submission, "Boeing sent Xene" it. The parties' agreement did not obligate Boeing to provide any more information. It certainly did not obligate Boeing to provide Xene what it demands now: "a list of parts actually manufactured during the relevant period." Despite Boeing's requests during the meet and confers, Xene has not identified anything showing that the plan or Xene's agreement to the plan was contingent on the provision of any information besides the "version of the part numbers list that identifies which part numbers are supplier-made parts" which Boeing already "sent" Xene.

Xene appears to be arguing "deficiencies" to cause delays and extract more information from Boeing that was not agreed upon, was not ordered, and that goes beyond the scope of Xene's discovery requests. Xene criticizes the Exhibit 11 list as "created...for this litigation" but does not identify anything in the plan or any Court order indicating that is a problem or a deficiency. Before agreeing to the sampling plan, Xene had Dr. Gross's declaration, which described how this list was created. Dkt. 77-1, ¶ 40. Xene never said it was entering the sampling plan agreement based on any assumption that the list was not created for litigation. Nor would any such assumption make sense. Xene did not even ask whether the list was or was not created for litigation before agreeing to the sampling plan. It cannot argue it assumed the list was not created for litigation when Xene was never told that.

[redacted] Dkt. 77-1, ¶ 40. Despite having had the parts list and this explanation for months, you did not raise this purported issue until two days before the deadline to choose your parts numbers.

Moreover, your stated concern that a manufacturing plan may not exist for a chosen part is entirely speculative, when Xene has not yet chosen its 50 parts. Anyway your stated concern is already accounted for in the agreed-upon sampling plan. Indeed, there is already a procedure in place within the sampling plan that provides that if a manufacturing plan is not within Boeing's possession, custody, or control, Xene can select another part number up to a maximum of 15 additional part numbers. Dkt. 119. If Xene selects a part number and a manufacturing plan does not yet exist for that part number (again, a speculative concern), Boeing remains willing to work with Xene in good faith to discuss alternative options. However, without any basis for assuming this scenario will actually occur, Xene's conjecture should not impede the parties' already agreed-upon plan.]

2. **Supplier and Manufacturer Information**

As also discussed, Boeing also has not provided the supplier/manufacturer information necessary to implement the sampling process. At the July 30 hearing, the Court specifically addressed whether Xene had been provided the supplier information necessary for a supplier-manufacturing-plan sampling process:

THE COURT: "Is it correct you have — again, Mr. Pollack said that you have produced a list of suppliers. If the Court wanted to direct the parties to consider and propose some kind of

process for sampling for supplier manufacturing plans, you've given at least the list of suppliers to Mr. Pollack at this point; is that correct?"
MS. HOLLIS: "Yes."
THE COURT: "He has that?"
MS. HOLLIS: "Yes, and I will absolutely double-check that. If there is any gap, I will produce it."

July 30 Hr'g Tr. 49:6–15.

The parties' sampling discussions were likewise premised on supplier identity. Boeing described a process in which Xene would "pick from our parts list a number of part numbers" and Boeing would retrieve the corresponding manufacturing plans. Boeing explained that "the rub with the number" was not simply the time required per part, but the number of third-party suppliers implicated because "[t]he more suppliers that make these parts that you have to go to, the more difficult and slow the production process would be." *Id.* at 59:1–11.

On August 26, Boeing acknowledged Xene's position that the [redacted] Boeing responded that those documents identified suppliers contracted to provide certain assemblies that corresponded to the parts list and further stated that it had addressed Xene's request "to identify how the part numbers correlate to the assemblies" through [redacted] Boeing stated that it "understands this to resolve the dispute."

Dr. Gross's subsequent testimony demonstrates why those materials do not resolve the [redacted]

[redacted]

Additionally, as we explained in our August 28, 2026 email, [redacted]

Thus, the issue is not simply identifying a list of entities that supply assemblies to Boeing or decoding the assembly represented by a portion of a Boeing part number. Xene needs information sufficient to correlate the relevant actual parts with the entities that manufactured or fabricated them and the applicable manufacturing facilities. That information is necessary both to implement the sampling process and to permit Xene to pursue targeted third-party discovery.

Boeing's present position that it cannot identify the supplier/manufacturer associated with particular part numbers—and that Xene did not request that information—is flatly contradicted by this record. Boeing's own August 26 correspondence reflects that Xene raised the correlation problem, Boeing represented that it had addressed it, and Boeing considered the dispute resolved. The sampling process Boeing proposed likewise contemplated an ability to associate selected part numbers with suppliers because Boeing itself identified the number of suppliers implicated as a principal consideration in determining the size of the sample.

Boeing's supplier and manufacturer information is also responsive to Xene's existing discovery requests concerning Boeing's suppliers and supply chain, including RFP Nos. 12 and 14 and Interrogatory No. 7. Boeing's contention that those requests do not require the particular part-to-manufacturer correlation discussed above does not resolve the present problem: Boeing represented that it had provided the supplier information necessary for sampling and subsequently represented that it had resolved Xene's request to correlate the part numbers to the supplier assemblies.

Please therefore identify and provide the information Boeing maintains that correlates the actual part numbers with the relevant supplier/manufacturer and manufacturing facility. If Boeing contends that [redacted] or some combination of those documents already provides that information, please explain specifically how Xene can use those documents to determine, for a selected actual part number, the supplier/manufacturer responsible for that part and the relevant manufacturing facility. If additional Boeing databases, PIN attributes, work-package information, or other records are required to make that correlation, please identify and produce that information.

Please also confirm whether Boeing has produced the [redacted] and identify the applicable Bates ranges. If Boeing contends some other document or dataset supplies the necessary information, please identify it and explain specifically how Xene can use it to make these correlations.

[Boeing: Contrary to Xene's assertions, the sampling plan agreement did not contemplate that Boeing would provide what Xene now demands—"information…that correlates the actual part numbers with the relevant supplier/manufacturer and manufacturing facility." Despite requests, Xene has not identified any writing even arguably reflecting an assumption or an agreement that this information would be provided. In fact, as discussed on the parties' meet and confer, Xene cannot even point to any discovery requests to which the information it now seeks—a part number-by-part number correlation between the individual part number and the specific supplier (including any downstream entities) that manufactures that part number—would be responsive. Each of the

discovery requests to which Xene points is explicitly limited to suppliers of **foamable microcapsules**, not the information Xene currently seeks. ROG 7, for example, seeks "all suppliers that provided **foamable microcapsules, microcapsules, microspheres, or thermally expandable pellets (including Expancel or equivalent)** for composite manufacturing" and therefore does not cover the requested information. RFP 12 seeks "communications with Nouryon or any other supplier **concerning foamable microcapsules, microcapsules, microspheres, or thermally expandable pellets (including Expancel or equivalent)**" and RFP 14 seeks "documents sufficient to show dates, quantities, suppliers, purchase orders, invoices, and shipping records **for foamable microcapsules, microcapsules, microspheres, or thermally expandable pellets (including Expancel or equivalent)**."

Xene's assertion that the sampling plan agreement was contingent on Boeing providing the demanded information about "supplier identity" is contradicted by the language of the agreed plan, which states exactly what Boeing would provide before Xene selected its 50 parts, and that was simply "a version of the part numbers list [Ex. 11 to Dkt. 82] that identifies which part numbers are supplier-made parts." Dkt. 118 at 1. Xene's assertion also is contradicted by the purpose of the sampling plan, and its own accusations in the case. Xene's complaint and infringement contentions blanketly contend that Boeing's 787 and 777X carbon fiber composite parts are universally made using Xene's foamable microcapsule process, and it moved to compel the supplier manufacturing plan documents on the theory those documents would show that use of microcapsules. If Xene's argued theories are correct, Xene should be able to select any part number on the list and the resulting plan document should show use of microcapsules.

Xene needs no supplier information to execute the sampling plan. Indeed, Xene provides no explanation for why the part-number-by-part-number identification of suppliers it now demands is "necessary…to implement the sampling process." Tellingly, Xene has admitted it wants this information "to pursue … third-party discovery." But the purpose of the sampling plan was merely to "sample a limited set of manufacturing plans maintained by Boeing for composite fiber parts manufactured by suppliers." Dkt. 118 at 1. It was not to enable Xene to pursue more discovery from third parties.

Xene's complaints also ignore the information about suppliers Boeing has already provided. [redacted]

Xene's demands are not within the scope of any of its discovery requests, any agreed upon sampling plan, or any Court order. Xene's attempts to suggest the parties' sampling plan cannot proceed without a part number-by-part number correlation to the specific supplier is unsupported. Please provide the list of 50 part numbers as the parties agreed upon.]

3. **Information Provided to Suppliers for Targeted Searches**

We also met and conferred regarding our request for permission to provide Boeing's suppliers with Boeing specification and material identifiers to facilitate their information searches. Xene requests confirmation that Boeing has no objection to Xene providing the following identifiers to relevant suppliers, where applicable to that supplier, for purposes of conducting targeted searches:

[redacted]

Please confirm whether Boeing has any objection to Xene providing these identifiers to relevant suppliers. If Boeing objects to any particular identifier, please identify the specific identifier and the basis for the objection.

As we also explained during the meet and confer, the specifications and other identifiers above may help narrow those searches, but they do not solve the more basic problem that Xene still lacks reliable information identifying the actual part numbers associated with each supplier/manufacturer. Although no supplier has specifically requested BAC/BMS numbers, Xene is attempting to provide additional identifiers that may facilitate targeted searches. Once Boeing provides that correlation, Xene can give each supplier the relevant actual part numbers together with the applicable Boeing specifications and other identifiers, substantially narrowing the third-party searches. The identifiers therefore facilitate, but do not substitute for, Boeing providing the part-to-supplier/manufacturer information requested above.

[Boeing: We will respond to this under separate cover]

4. **Status of Boeing's Court-Ordered Production**

During yesterday's meet and confer, Boeing represented that it now has completed its production of (1) its Controlling Engineering Documents for its accused carbon fiber composite parts, (2) its records relating to approvals for deviations from the Controlling Engineering Documents; (3) its Process Departures; (4) its Process Control Drawings; and (5) its manufacturing plans for carbon fiber composite parts manufactured by Boeing for the 787 and 777X. Boeing thus represented that the only category of items it has not completed is the applications relating to approved deviations, which it represented would be forthcoming. Please let us know if our understanding is incorrect.

[Boeing: We will respond to this under separate cover]

5. **Part- and Shop-Specific Manufacturing Documentation**

During her deposition, Dr. Gross identified part- and shop-specific manufacturing documentation that she explained were more pertinent than the generic BAC specifications Boeing has relied upon to date. [redacted]

[redacted]

Boeing has represented that it produced manufacturing plans for the Boeing-made parts. To date, however, Boeing has not yet produced its MPCDs. Accordingly, please identify and produce such documents for Boeing's accused carbon fiber composite parts.

[Boeing: We will respond to this under separate cover]

6. **Sampling Deadline**

Finally, the above unresolved issues—particularly the lack of a parts list for current (as opposed to future) parts—precludes Xene from making meaningful selections under the Court-ordered sampling process. In particular, Xene should not be required to make its sampling selections based on information that Boeing's own witness testified she would not use for the relevant part-specific inquiry, particularly where she identified other program-specific information maintained by Boeing that can be used for that inquiry.

Accordingly, Xene requests that Boeing agree to extend Xene's deadline for selecting sampled parts until Boeing provides at least a list of existing parts. If Boeing does not agree, please confirm that position **by close of business today** so that Xene can seek appropriate relief from the Court tomorrow.

[Boeing: For the reasons already summarized above, Xene's arguments that it is entitled to more information before it selects its 50 parts are incorrect, unsupported, and contradicted by the record. Boeing does not agree to extending the deadline required by the parties' sampling plan. Please provide the 50 part numbers by the deadline tomorrow (9/4).]

* * *

Given our current September 4 deadline to identify parts, we would appreciate Boeing's substantive response to item #6 above by close of business today. We also would appreciate Boeing's response **by September 9** on the remaining items. In particular, please confirm: (1) what current and historical program-specific parts information Boeing will provide; (2) what information Boeing will provide to correlate actual parts with their suppliers/manufacturers and manufacturing facilities; (3) whether Boeing objects to Xene providing the identified specifications and other search terms to relevant suppliers; and (4) the status and expected completion date of each category of production required by the Court's July 30 ruling.

These issues bear directly on Xene's ability to complete the Court-ordered sampling process and pursue the remaining first- and third-party discovery within the existing schedule. We therefore need to understand promptly whether Boeing will provide the requested information or whether Court intervention will be necessary.

Regards,
Tara

<image001.png> Tara R. Zurawski
*Counsel*
**Bunsow De Mory LLP**
+1703-828-4019 o | +1-415-426-4744 f

277 S Washington St. Suite 210, #1088 Alexandria, VA 22314

www.bdiplaw.com | tzurawski@bdiplaw.com

**From:** Tara Zurawski
**Sent:** Wednesday, September 2, 2026 11:47 AM
**To:** 'Dirks, Steven' <steven.dirks@kirkland.com>; #KE-Boeing-Xene <ke-boeing-xene@kirkland.com>; Hollis, Amanda <ahollis@kirkland.com>; Stephen E. Noona <stephen.noona@kaufcan.com>; LoCascio, Gregg F. <glocascio@kirkland.com>; Tripathi, Kelly <kelly.tripathi@kirkland.com>
**Cc:** Andres Healy <AHealy@susmangodfrey.com>; Stuart Pollack <SPollack@susmangodfrey.com>; Ryan Weiss <RWeiss@susmangodfrey.com>; Rebekah Greene <RGreene@susmangodfrey.com>; Jo Un Eom <JEom@susmangodfrey.com>; Sarah Siegel <sarahsiegel@susmangodfrey.com>; 'Andres Healy' <ahealy@susmangodfrey.com>; 'Xene_Boeing@bdiplaw.com' <Xene_Boeing@bdiplaw.com>
**Subject:** RE: Xene v. Boeing - request to meet and confer regarding Dr. Gross deposition

Steven,

4:00 p.m. eastern today works.

Your questions do not address the issues raised in our email. We identified specific representations Boeing made concerning the sufficiency of the parts, supplier/manufacturer, and manufacturing information it had provided—including representations to Xene that these issues had been resolved—and contrasted those representations with Dr. Gross's testimony concerning what the materials actually show and the additional information and resources Boeing maintains. Those are Boeing's representations and Boeing's production, and we are asking Boeing to explain the discrepancies identified in our email.

It is unnecessary to relitigate the record. The record speaks for itself, including the parties' correspondence, the hearing and deposition transcripts, and the parties' discussions during the meet-and-confer process. We do not agree with your statement that Boeing may "assume" otherwise if Xene does not respond to the additional questions you have posed before this afternoon's meet and confer. Nor is it reasonable to send a series of new demands late in the evening before the meet and confer and demand immediate

responses in advance of it—particularly where Xene requested the conference to obtain clarity *concerning Boeing's own production and representations*.

To be clear, today's meet and confer is not an opportunity to interrogate Xene about the concerns we raised. We expect Boeing to explain what it has produced, how that production can be reconciled with Dr. Gross's testimony, and what Boeing intends to produce to address the deficiencies we identified. We also expect clarity regarding the supplier/manufacturer information raised in our Friday correspondence.

If Boeing's position is that it will not provide further information or take steps to resolve the discrepancies raised by its own witness's testimony, please simply say so. In the absence of a substantive response and a concrete path to resolution at today's meet and confer, Xene will assume that Boeing does not intend to provide any further information responsive to these issues and will seek appropriate relief from the Court.

Sincerely,
Tara

<image001.png>

Tara R. Zurawski

*Counsel*

**Bunsow De Mory LLP**
+1703-828-4019 o | +1-415-426-4744 f

277 S Washington St. Suite 210, #1088 Alexandria, VA 22314

www.bdiplaw.com | tzurawski@bdiplaw.com

---

**From:** Dirks, Steven <steven.dirks@kirkland.com>
**Sent:** Tuesday, September 1, 2026 7:00 PM
**To:** Tara Zurawski <tzurawski@bdiplaw.com>; #KE-Boeing-Xene <ke-boeing-xene@kirkland.com>; Hollis, Amanda <ahollis@kirkland.com>; Stephen E. Noona <stephen.noona@kaufcan.com>; LoCascio, Gregg F. <glocascio@kirkland.com>; Tripathi, Kelly <kelly.tripathi@kirkland.com>
**Cc:** Andres Healy <AHealy@susmangodfrey.com>; Stuart Pollack <SPollack@susmangodfrey.com>; Ryan Weiss <RWeiss@susmangodfrey.com>; Rebekah Greene <RGreene@susmangodfrey.com>; Jo Un Eom <JEom@susmangodfrey.com>; Sarah Siegel <sarahsiegel@susmangodfrey.com>; Xene_Boeing <Xene_Boeing@bdiplaw.com>
**Subject:** RE: Xene v. Boeing - request to meet and confer regarding Dr. Gross deposition

**[EXTERNAL]**

Tara,

We disagree. Much of your email reflects a mischaracterization of the record and/or a lack of review of the documents produced. We're happy to discuss these points during the meet and confer. We're available tomorrow at 4pm ET. Please confirm that time works and we will send an

invite. As this discussion relates to the suppliers, we can also discuss during the meet and confer the issues raised in your email from Friday. Before the meet and confer, please identify the number and the text of the Requests for Production or Interrogatories, if any, that you contend requested "identif[ication of] ... the suppliers/manufacturers that make th[e] [accused] parts" on a part number-by-part number basis. Also please identify any writing you contend shows that Xene's agreement to the parties' compromise concerning Xene's motion to compel was "based on" Boeing "represent[ations] that it had provided" "information necessary to identify the specific accused parts, the suppliers/manufacturers that make those parts, and the corresponding manufacturing records." If you do not provide us this information before the meet and confer, we will assume Xene does not contend it exists.

Best,
Steven

**Steven Dirks**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave, N.W., Washington, D.C. 20004
**T** +1 202 389 3024 **M** +1 202 531 9787
**F** +1 202 389 5200

steven.dirks@kirkland.com

---

**From:** Tara Zurawski <tzurawski@bdiplaw.com>
**Sent:** Monday, August 31, 2026 7:26 PM
**To:** Dirks, Steven <steven.dirks@kirkland.com>; #KE-Boeing-Xene <ke-boeing-xene@kirkland.com>; Hollis, Amanda <ahollis@kirkland.com>; Stephen E. Noona <stephen.noona@kaufcan.com>; LoCascio, Gregg F. <glocascio@kirkland.com>; Tripathi, Kelly <kelly.tripathi@kirkland.com>
**Cc:** Andres Healy <AHealy@susmangodfrey.com>; Stuart Pollack <SPollack@susmangodfrey.com>; Ryan Weiss <RWeiss@susmangodfrey.com>; Rebekah Greene <RGreene@susmangodfrey.com>; Jo Un Eom <JEom@susmangodfrey.com>; Sarah Siegel <sarahsiegel@susmangodfrey.com>; Xene_Boeing <Xene_Boeing@bdiplaw.com>
**Subject:** Xene v. Boeing - request to meet and confer regarding Dr. Gross deposition

Counsel,

We would like to meet and confer promptly regarding what we learned during Dr. Gross's deposition concerning Boeing's representations and production regarding part and supplier/manufacturer information.

For months, Xene has been seeking the information necessary to identify the specific accused parts, the suppliers/manufacturers that make those parts, and the corresponding manufacturing records. Boeing repeatedly represented that it had provided that information. Those representations were repeated at the July 30 hearing and formed the basis for the parties' compromise concerning Xene's motion to compel, under which Xene agreed to select a sample of parts from Boeing's parts list so that Boeing could produce the corresponding manufacturing plans.

[redacted]

[redacted]

The same is true of the materials Boeing identified as providing supplier information. [redacted]

More troubling, Dr. Gross identified Boeing sources that do contain—or can be used to obtain—the information Xene has been requesting. [redacted] Despite the importance of these documents, Boeing has not produced them to us. Further, the above are just some examples of the issues Dr. Gross's testimony has raised.

Given Dr. Gross's testimony, we have a serious concern that Boeing obtained Xene's agreement to narrow its discovery based on representations that the materials Boeing had provided would permit Xene to identify and sample the relevant parts and suppliers, when Dr. Gross's testimony now establishes that those materials do not provide that information and that Boeing has other resources available that do. This has consumed substantial discovery time and directly affected Xene's ability to pursue both Boeing and third-party discovery.

We would like to meet and confer immediately regarding how Boeing intends to correct these deficiencies and promptly provide the part-to-supplier/manufacturer information necessary to implement the discovery compromise reached on July 30. The deadlines for the parties' sampling process are approaching, and the deficiencies identified above directly impede Xene's ability to make the selections contemplated by that process. Given the upcoming deadlines, we would like to meet and confer tomorrow or Wednesday. If we cannot promptly resolve these issues, Xene will need to seek relief from the Court.

Please let us know your availability.

Sincerely,
Tara

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

---

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.